UNITED STATES DISTICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHRISTOPHER BARGER, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:21-CV-00366-HAB |
| WELLS COUNTY SHERIFF'S OFFICE, AND WELLS COUNTY SHERIFF SCOTT HOLIDAY | ) |
| Defendants. | ) |

## OPINION AND ORDER

While he was a pretrial detainee at the Wells County Jail (the Jail), Plaintiff Christopher Barger (Barger) was attacked by another inmate. He sued the Wells County Sheriff's Office and the Sheriff, Scott Holiday, in both his individual and official capacities, asserting that the Defendants failed to protect him from the inmate attack and delayed providing him medical care and treatment for the injuries he sustained. He seeks damages pursuant to 42 U.S.C. §1983 for these violations. Defendants moved for summary judgment (ECF No. 13), the motion is fully briefed (ECF Nos. 14, 19, and 22) and ripe for consideration. For the reasons below, the Defendants' Motion for Summary Judgment will be granted.

## DISCUSSION

### A. Factual Background

The facts are straightforward and largely undisputed. After his arrest in August 2019, Barger became an inmate at the Jail housed in H-Block. On September 28, 2019, Barger was seated in a chair in the dayroom reading and watching TV. He had his leg propped up on the dayroom tabletop. Another inmate, Carlos Slater (Slater), objected to the way Barger was sitting and wanted

to fight. Barger told Slater to "go away," but Slater walked around him and invited him to the shower area to fight. (Dfdt. Stmt of Material Facts, ECF No. 15, ¶ 13). Barger refused so Slater began circling him and unsuccessfully tried to knock Barger out of his chair. Barger then got up and confronted Slater, the two fought, and Barger slipped on water and fell, hitting his head on the table-top and striking his jaw on the stool. Barger does not know how long the fight lasted but he recalled that it wasn't long. (*Id.* ¶¶s 14-15). The fight, captured on Jail surveillance camera, shows that the entire physical altercation lasted 14 seconds before Barger fell to the ground. (Video, ECF No. 16, 1:26-1:40; ECF No. 15 ¶ 68).

Ten to fifteen minutes later, Barger states he cleaned himself up and sat down to eat. He then realized his jaw was broken and called the Jail staff. (*Id.* ¶¶s 20-21). Barger reported to jail staff that he "slipped on water." (*Id.* ¶ 21). Despite Jail officers believing Barger was lying, they removed him from the block, cleaned him up, gave him an ice pack, photographed his injuries, took his statement, completed the Jail injury report, and called for the Jail nurse. (*Id.* ¶¶s 22-25). Barger remained in an observation area while the Jail staff waited for instructions from the medical staff.[1]

A few hours later,[2] the Jail staff received instructions from the Jail doctor to transport Barger to the emergency room. Barger was diagnosed with a facial laceration, hematoma of frontal scalp, and preorbital contusion of the left eye. (ECF No. 15 ¶ 31). After his release from the Jail, Barger had maxillofacial surgery. (*Id.* ¶ 32).

---

[1] Jail medical services are provided by Quality Correctional Care, LLC, an entity under contract by the Wells County Sheriff's Department.

[2] Barger claims it was 6 to 8 hours before he was taken to the hospital. Jail records indicate the injury report was completed by Jail staff at 16:05 hours (4:05 p.m.) and that he was transported at 20:44 hours (8:44 p.m.). (ECF No. 15 ¶¶s 26, 28 and 30).

2

As part of his normal practice, Sheriff Holliday reviewed the Jail surveillance footage of the incident between Barger and Slater to determine whether criminal charges should be pursued or whether in-house disciplinary action was appropriate. (ECF No. 15 ¶ 58). The recording substantially confirms the series of events between Barger and Slater, as described by Barger. (*Id.* ¶¶s 59–69). The parties do not indicate what, if any, action was taken after Sheriff Holliday reviewed the video.

Prior to his encounter with Slater, Barger made no reports to the Jail staff or requested to be kept separate from Slater. (ECF No. 15 ¶ 33, 37). Barger "never had any real issues" with Slater, (*Id.* ¶34), nor did he witness Slater get into verbal or physical altercations with other inmates. (*Id.* ¶¶s 35-36). Sheriff Holliday never communicated with Barger while he was housed at the Jail. (ECF No. 15, ¶ 53-55). Similarly, Sheriff Holliday never received any information from anyone that Barger and Slater should not be housed together or that Slater was violent or threatened Barger or any other inmates. (*Id.* ¶¶s 56-57).

Barger claims he heard rumors that Slater had been sentenced and Sheriff Holliday allowed him to stay at the Jail when he should not be there. (ECF No. 15 ¶¶ 45-46). Sheriff Holiday confirms that Slater was sentenced 3 days before the fight, but explains that the Indiana Department of Corrections (IDOC) had not yet made arrangements to pick him up. (*Id.* ¶ 75). Sheriff Holliday did not request, as Barger believes from rumors he heard, that Slater be housed to serve his state sentence in the Jail. (*Id.* ¶ 77). Rather, it is undisputed that the IDOC picks up sentenced inmates at times it schedules and designates. It is not controlled by any act of the Sheriff. (*Id.* ¶ 78).

The Jail has a Standard Operating Procedure that was in place during Barger's stay there. Among its procedures are a "Classification Policy" which addresses inmate safety and security concerns and an "Inmate Injury Policy" that instructs how to deal with inmate injuries and hospital

3

transport. Both Barger and Slater were housed in the general population in compliance with the Classification Policy. Likewise, the Jail staff complied with the Inmate Injury Policy when it treated and transported Barger to the hospital.

### B. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

### C. Analysis

4

Section 1983 imposes liability on any "person" who, while acting under color of state law, violates an individual's federally protected rights. In advancing such a claim, a plaintiff may sue a defendant in either his individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), while official-capacity claims seek to impose liability on the governmental entity for whom the officer works, *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).

**1. Individual Capacity Claim against Sheriff Holliday**

"Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.")). Barger pursued this case claiming that his Fourteenth Amendment rights were violated by Sheriff Holliday. Yet in response to the Defendants' motion, Barger writes, "it is conceded by Barger that he did not produce any evidence in the record that Sheriff Holliday was involved with respect to any of the events that transpired resulting in Barger's injuries on September 28, 2019…" (ECF No. 19 at 2). Barger also concedes that he cannot identify any employees at the Jail that "were aware of any unprovoked attack on Barger by Slater until after the fact." (*Id.* at 3). Finally, Barger argues, without any citation to authority,[3] that "putting a name to an actor" is irrelevant under § 1983. (*Id.* at 4). This contention is both baffling and wrong.

A government official sued in his or her individual capacity is liable "only if he [or she] personally caused or participated in a constitutional deprivation." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (internal quotations and citation omitted); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under § 1983 … requires personal

---

[3] Plaintiff's counsel did not cite a single case authority in his 11-page response to Defendants' motion for summary judgment.

5

involvement in the alleged constitutional deprivation.") This means the plaintiff must establish a causal connection between the sued officials and the alleged misconduct. *Colbert*, 851 F.3d at 657 (7th Cir. 2017); *Dircks v. Barnes*, 2023 WL 4761662, at *15 (S.D. Ind. July 26, 2023). Indeed, "personal involvement of the named defendant is an essential element of every claim under § 1983." *Miller v. Rokita*, 2023 WL 4491213, at *6 (N.D. Ind. July 12, 2023) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

    a. **Failure to Protect**

To survive summary judgment on a failure to protect claim, Barger must produce evidence that the named defendant:

(1) Made an intentional decision with respect to the conditions under which the plaintiff was confined;
(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Kemp,* 27 F.4th at 496.

The record is clear, and Barger concedes, that the only named defendant, Sheriff Holliday, had no personal involvement in failing to protect him from Slater. He produces no evidence, and concedes that he cannot, that Sheriff Holliday took any action that put him at substantial risk of harm. In fact, the record is full of evidence to the contrary. Sheriff Holliday was unaware that Slater posed any risk to any inmate; no prior complaints had been made to the Sheriff about Slater; and there is no evidence that Barger and Slater had "bad blood" and shouldn't be housed in the same block. In fact, Barger acknowledged that he and Slater "never had any real issues." Thus, Barger cannot establish that Sheriff Holliday's conduct caused his injuries. Since Barger has not

raised a genuine issue of fact that Sheriff Holliday violated his constitutional rights, summary judgment will be granted on this claim.

      **b. Deprivation of Medical Care**

Barger also raises a claim that Sheriff Holliday deprived him of adequate medical care. Prison officials who are deliberately indifferent to a substantial risk of serious harm to an inmate's health violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A delay in medical treatment may constitute deliberate indifference if the delay exacerbates the injury or unnecessarily prolongs an inmate's pain, particularly if a provider knows that the pain is treatable. *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022). The Seventh Circuit has explained that "[t]he length of delay that violates the [Constitution] depends on the severity of the condition and the ease of providing treatment: For example, a steadily worsening toothache that causes severe pain to an inmate while eating and sleeping could support a finding that a two-month delay in referring the inmate to a dentist constitutes deliberate indifference." *Hill v. Meyer*, 2022 WL 1078871, at *3 (7th Cir. April 11, 2022) (citing *Berry v. Peterman*, 604 F.3d 435, 438, 441 (7th Cir. 2010)).

Barger's only argument in response to summary judgment is "the course of conduct of the post attack by the jail nurse and jail doctor as to whether or not it was adequate should be left to the trier of fact and not to the Court…" (sic) (ECF No. 19 at 7). Again, however, the Court is confounded. Barger did not sue the Jail nurse or the Jail doctor. He sued Sheriff Holliday. So unless Sheriff Holliday took some personal action to thwart Barger's access to medical care after the fight, he has no claim. This Court will not scour the record for supportive evidence or rack its brain for reasons trying to discern the basis of the Plaintiff's case. What is clear in this record is that the Sheriff had no involvement in the medical care Barger received after the fight. Jail staff followed

Jail policies by treating Barger's surface injuries, completing an injury report, and awaiting direction from other medical personnel. Four hours after completing the injury report, Barger was transported to the hospital to be checked. No one was indifferent to Barger's medical needs. Summary judgment is GRANTED on Barger's claim of deprivation of medical care.

**2.      Official Capacity Claim against the County**

A § 1983 claim "against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents." *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999); *accord Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (recognizing that a claim brought against an individual in their official capacity is "in all respects other than name, to be treated as a suit against the [municipal] entity … for the real party in interest is the entity") (internal citation omitted). Thus, when a plaintiff brings a claim against a municipal entity under § 1983, if the plaintiff alleges the same claim against a government official in his or her official capacity, such claim is duplicative and subject to dismissal. *Moreno-Avalos v. City of Hammond, Ind.*, No. 2:16-cv-172, 2017 WL 57850, at *2 (N.D. Ind. Jan. 4, 2017) ("If a plaintiff brings a suit against a government entity, any claim against an officer of that entity in his or her official capacity is redundant and should be dismissed.") (collecting cases). Since here Barger sued the Wells County Sheriff's Office and Sheriff Holliday in his official capacity, he has essentially sued the County twice. Thus, the Court focuses only on the claim against the County, as it is duplicative of an official capacity claim against the Sheriff.

Recovery against a governmental unit or entity cannot be based on *respondeat superior* for purposes of § 1983 and Barger must establish the County's liability via *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978). To do so, Barger must provide evidence that there was a custom or practice within the County of failing to protect pretrial detainees in the Jail or that

8

a policy or practice existed to deprive inmates of adequate medical care. But, "a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citations and quotations omitted); *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Again, Barger concedes that no express policy or widespread practice or custom caused him to suffer a constitutional violation. Barger has provided no evidence that there was a policy or custom within the County to allow inmate attacks in the Jail. The same is true for his claim of inadequate medical care. And, for this reason, the County cannot be held liable.

Additionally, there can be no liability against the County without an underlying constitutional violation. Thus, given this Court's conclusion that Sheriff Holiday did not personally participate in any acts to violate the Fourteenth Amendment, the substantive claims against the County fail. *See Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir.2003). Accordingly, the Defendants' Motion for Summary Judgment is GRANTED as to the claims against the County.

### 3. Barger's Supplemental State Law Claims

Barger also asserts pendent state law claims against the Defendants. Absent this Court's acceptance of supplemental jurisdiction this is all that will survive summary judgment. Principles of comity encourage the court to relinquish supplemental jurisdiction over state law claims when all of the federal claims are disposed of before trial. *See Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008); *Groce v. Eli Lilly & Co.*, 193 F.3d

9

496, 501 (7th Cir. 1999); 28 U.S.C. § 1367(c)(3). In fact, in this circuit, there is a "presumption" that federal courts will relinquish jurisdiction over supplemental state law claims when the federal claims drop out of the case. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* at 479 (internal citation and quotation marks omitted).

The Seventh Circuit has identified three situations when a district court should retain jurisdiction over a supplemental claim even though all federal claims have dropped out: "where the statute of limitations would bar the refiling of the supplemental claims in state court ...; where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007). None of those circumstances are present here. Therefore, the court will decline to exercise supplemental jurisdiction over plaintiff's state law claims and they will be dismissed without prejudice.

## CONCLUSION

For the reasons above, the Court GRANTS the Defendants' motion for summary judgment as to Plaintiff's claims brought under 42 U.S.C. §1983. The pendent state law claims are DISMISSED without prejudice. The Clerk is directed to enter judgment for the Defendants on the federal claims.

SO ORDERED on August 30, 2023.

        s/ *Holly A. Brady*
        CHIEF JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT